**THE ABRAM P. SKIDMORE And Fifteen Other Vessels of McWilliams Bros., Inc.**

District Court, E. D. New York. February 18, 1927.

**Admiralty ⬡═50—Intervention by receivers in suit in view to enforce maritime liens denied.**

Where vessels owned by a corporation have been seized under libels to enforce maritime liens, the court of admiralty will not permit the suit to be obstructed and delayed, and costs increased, without an adequate showing of necessity, by intervention of receivers appointed by a court of equity in a conservation suit brought against the corporation by other creditors.

In Admiralty. Suit by the Russell Dry Docks, Inc. and others, against the tug Abram P. Skidmore, and 15 other vessels, owned by McWilliams Bros., Inc. On application by receivers to intervene and defend. Denied.

Russell Dry Docks, Inc., and other claimants filed libels to enforce liens against the tug Abram P. Skidmore and 15 other vessels owned by McWilliams Bros., Inc. The vessels were seized by the marshal. Upon return of the process, receivers, appointed by the United States District Court for the Southern District of New York in an equity conservation suit by a creditor against McWilliams Bros., Inc., applied to intervene and defend, without filing a stipulation for costs, as representing creditors of the corporation, including other maritime lien claimants, who had not instituted proceedings in admiralty. The libelants produced proof from the company's books showing that the claims were admitted, upon which the maritime liens were based, and contended that the intervention was unnecessary, and would involve expenses depleting the fund arising from the sale of the vessels, out of which the maritime liens were to be paid. It was further urged in opposition that the original cognizance of the court in these admiralty causes was exclusive, and no other court, state or national, could interfere with its jurisdiction.

Alexander & Ash, of New York City, for libelants.

Dunnington, Walker & Gregg, of New York City, for complainant.

Rufus Putnam Livermore, of New York City, for defendant.

Kobbe, Thatcher, Frederick & Hoar, of New York City, for temporary receivers.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, for Cornell Steamboat Co.

INCH, District Judge (after stating the facts as above). The above motions are both alike and can be decided together. The application before me is by certain receivers in equity appointed in another district to be allowed to file a claim to the vessels without filing a stipulation for costs.

There are no ancillary receivers in this district, but in passing upon these motions I am assuming, for this purpose only, that the original receivers could file such claim. I say this for the reason that, while I believe proper practice requires the appointment of ancillary receivers, and that the application should be made by them, the real question is more important than a question of practice. For this reason, also, I am passing over the very important fact that there is practically no proof, by affidavit or otherwise, sufficient to justify the court in granting this unusual relief, for, while the libelants have produced quite persuasive prima facie proof as to the accuracy and justness of their liens, the receivers content themselves with the mere statement that "they believe" many of the liens may be defeated or reduced.

The real question is, as I have said, whether or not, when one group of maritime

lienors have duly proceeded in admiralty, another group of maritime lienors can proceed in equity, and by injunction, receivership, etc., not only obstruct and delay the admiralty group, but dump into the cases all the expenses caused by the equity proceedings; a condition that may seriously deplete the fund ultimately obtained and applicable to the admiralty liens.

All courts, whether admiralty or equity, are in favor of conservation, so far as unnecessary expenses go, of the property of a claimant or respondent or defendant, as the case may be, and are equally in favor of plans of procedure that will adjust the differences of the parties in a most expeditious and fair way. Each has its own way of going about it.

In this case the libelants, with this in mind, have offered, in their papers, as well as on the arguments, to allow the receivers to appear before the commissioner, to be appointed by interlocutory decree, and offer such evidence as to correctness of the items as they wish. They also offer to arrange among themselves and in co-operation with the receivers, so far as this may properly be done, for a sale or sales as will tend to bring together at one time the best number of possible buyers, instead of having various sales at different times, which might be found to be harmful.

It would seem to have been decided that the court of admiralty would have taken the same position as I take here, had this been a question of a court of bankruptcy, instead of a court of equity, as, for instance, The Philomena (D. C.) 200 F. 859, and such cases as Moran v. Sturges, 154 U. S. 256, 14 S. Ct. 1019, 38 L. Ed. 981, particularly at page 285 (14 S. Ct. 1028), and Paxson v. Cunningham (C. C. A.) 63 F. 132, and many other such cases, involving directly or indirectly equity receivers, as well as bankruptcy receivers.

I mention this for, from what has been said on the arguments, it may possibly be surmised that insolvency, as defined by the Bankruptcy Act, is really the basis of the present equity suit, rather than the solvency on which its life depends, a situation not unusual, and to which Judge Augustus Hand called attention in a recent address to the Bar Association of New York City.

This application is made to the court of admiralty, which has possession of the "res." The lienors should be allowed to proceed with their remedy in this court. They should not be charged with the additional expenses, heavy enough as they are, of proceedings in another court. The motions of the receivers should be denied, and, as this means an interlocutory decree by default, for the reason that there has been no intimation that the receivers or ancillary receivers, if appointed, ever intended to comply with the rules, unless this relief now asked for was granted, such default is noted, and the usual interlocutory decree ordered, with reference, etc.

In drawing such a decree, it might possibly be well (if libelants are still willing) to mention that the receivers should have this right to examine before the commissioner the correctness of the items of the liens, etc., I do not make any such condition. It may be sufficient to have it in the orders to be entered hereon or left to counsel, as libelants deem best. Admiralty rule 43.